UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| YUROK TRIBE, on behalf of itself and its members,<br><br>        Plaintiff,<br><br>    v.<br><br>RESIGHNINI RANCHERIA and GARY MITCH DOWD,<br><br>        Defendants. | Case No. 16-cv-02471 RMI<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. 47.) |

This is an action in which the Yurok Tribe ("the Tribe") seeks a declaratory judgment that the Resighini Rancheria ("the Rancheria") and Gary Mitch Dowd, a member of the Rancheria, do not have any rights to fish in the Klamath River Indian fishery within the Yurok Reservation. The Complaint sets forth two claims for relief: 1) violation of the Hoopa-Yurok Settlement Act; and 2) violation of the Yurok Tribe's exclusive federally reserved fishing right. Pending before the court is the Rancheria's motion to dismiss for lack of subject matter jurisdiction. Having considered the parties' arguments at the hearing and in their papers, the court will grant the motion for the reasons expressed below.

**DISCUSSION**

Sovereign Immunity

Defendants move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) on the ground that this court lacks subject matter jurisdiction over any of the claims asserted against either Resighini Rancheria or Gary Mitch Dowd based on the Rancheria's sovereign immunity. It is undisputed that Resighini Rancheria is a federally-recognized Indian

Tribe with sovereign immunity. It therefore cannot be sued without its consent. *See generally Larimer v. Konocti Vista Casino Resort, Marina & RV Park*, 814 F. Supp. 2d 952, 955 (N.D. Cal. 2011). The Rancheria argues that it has not waived its tribal sovereign immunity. The Tribe, however, argues that the Rancheria has waived its immunity from suit by participating in this action.

Although tribal sovereign immunity may be waived, or abrogated by Congress, any such waiver must be unequivocally expressed and is to be narrowly construed. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (a waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed") (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)); *accord, C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001) ("To abrogate tribal immunity, Congress must unequivocally express that purpose.") (citing *United States v. Oregon*, 657 F.2d 1009 (9th Cir. 1981); *Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989) ("[T]ribal sovereign immunity remains intact unless surrendered in express and unequivocal terms.").

The requirement that the waiver of sovereign immunity be "unequivocally expressed" is not a "requirement that may be flexibly applied or even disregarded based on the parties or the specific facts involved." *Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1267 (10th Cir. 1998). "In the absence of a clearly expressed waiver by either the tribe or Congress, the Supreme Court has refused to find a waiver of tribal sovereign immunity based on policy concerns, perceived inequities arising from the assertion of immunity, or the unique context of a case." *Id*.

"There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. U.S. ex rel. Dept. of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 811 (9th Cir. 2001). "The plaintiff bears the burden of showing a waiver of tribal sovereign immunity." *Hall v. Mooretown Rancheria*, No. 2:12-cv-1856 LKK GGH PS, 2013 WL 2486610 *3 (E.D. Cal. June 10, 2013) (quoting *Ingrassia v. Chicken Ranch Bingo and Casino*, 676 F. Supp. 2d 953, 956-57 (E.D. Cal. 2009).

The Yurok Tribe argues that Resighini Rancheria has waived its sovereign immunity by

taking numerous actions inconsistent with an intent to preserve its immunity. These include an invitation to the Tribe to submit this dispute to the court as "friendly litigation," attending the initial case management conference, participating in joint efforts to develop joint summary judgment proceedings, seeking an out of court resolution through the court's mediation process, and failing to object to the entry of the case management order. The Tribe argues that it was not until the Rancheria saw the Yurok Tribe's motion for summary judgment that it sought dismissal on sovereign immunity grounds. The Tribe argues that this was a tactical decision that undermines the integrity of the judicial process, and that the Rancheria's conduct should be construed as a waiver of its immunity.

"In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction has the burden of proving its existence,' *i.e.* that immunity does not bar the suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013), cert. denied, ––– U.S. ––––, 133 S.Ct. 2829, 186 L.Ed.2d 885 (2013)). Here, the Tribe relies on two cases: *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754 (9th Cir. 1999.), amended on denial of reh'g, 201 F.3d 1186 (9th Cir. 1999) (sovereign waived immunity by participating in extensive pre-trial activities and waiting until the first day of trial to raise immunity defense) and *In re Bliemeister*, 296 F.3d 858 (9th Cir. 2002) (sovereign immunity waived by raising the defense as a tactical decision after the litigation had reached an advanced stage). Both were cited in *Pistor*, as illustrative of the point that "[a] defendant may . . . be found to have waived sovereign immunity if it does not invoke its immunity in a timely fashion and takes actions indicating consent to the litigation." *Pistor*, 791 F.3d at 111. The key questions in those cases were whether the sovereign's conduct was "incompatible with an intent to preserve [its] immunity," and whether the decision to assert it after the litigation was substantially advanced was designed to gain a tactical advantage that undermined the integrity of the judicial system and imposed substantial costs on the litigants. *Hill*, 179 F.3d at 758; *Bliemeister*, 296 F.3d at 861.

Resighini Rancheria argues that the holdings in *Hill and Bliemeister* are inapplicable here, as those cases addressed the waiver of Eleventh Amendment immunity by the states of Arizona

3

and Maryland. The court finds unnecessary to determine whether these holdings are applicable to the instant tribal sovereign immunity case because *Hill* and *Bliemeister* are readily distinguishable on the facts. In *Bliemeister,* the defendant did not raise an immunity defense in its answer or in its motion for summary judgment, argued the merits of the case, and then raised immunity only after listening to the court's substantive comments on the merits of the case. *Bliemeister*, 296 F.3d at 862. In *Hill*, the defendant waited until the first day of trial to invoke immunity, hedging its bet on the trial's outcome. *Hill*, 179 F.3d at 756. By contrast, in the present case, Resighini Rancheria asserted sovereign immunity at the first opportunity. The Rancheria asserted "Sovereign Immunity -- Lack of Personal Jurisdiction and Subject Matter Jurisdiction" as its first affirmative defense. Answer, (Doc. 14), 10:19-24. It then subsequently raised it explicitly in the Joint Case Management Statement: "Should the parties not reach an agreement as to a set of stipulated facts, the defendants intend to raise tribal sovereign immunity as a bar to this action in its entirety. In that event, the issue will be limited to whether tribal sovereign immunity bars the Court from asserting jurisdiction over the case, Defendant Resighini Tribe, and Defendant Dowd." Joint Case Management Statement, (Doc. 22) 7:26-8:2. Thus, unlike in *Hill* and *Bliesmeister,* Resighini Rancheria did not make a belated assertion of immunity so as to gain a tactical advantage. The court further finds that Resighini Rancheria invoked its immunity to suit in a timely manner by asserting sovereign immunity in both its Answer and in the Case Management Statement. The court finds, therefore, that the Yurok Tribe has failed to carry its burden under *Pistor* of showing that Resighini Rancheria's undisputed sovereign immunity does not bar this suit. The court must therefore conclude that the Rancheria did not waive its sovereign immunity from suit and is exempt from this action.

<u>Defendant Gary Dowd, Official Capacity</u>

Defendants move to dismiss the remaining Defendant, Gary Dowd, who is sued in both his official capacity as Secretary of the Resighini Rancheria and in his individual capacity. Resighini Rancheria argues that by bringing an official capacity suit against Dowd as Secretary of the Resighini Rancheria, the Yurok Tribe is in effect bringing a suit against the Rancheria. It contends that because Resighini Rancheria has not waived its sovereign immunity, the suit is barred to the

4

extent that it is brought against Dowd in his official capacity.

Tribal sovereign immunity extends to tribal officers acting in their official capacities and within the scope of their authority. *See Linneen v. Gila River Indian Community.*, 276 F.3d 489, 492 (9th Cir. 2002) (citing *United States v. Oregon*, 657 F.2d 1009, 1013 n. 8 (9th Cir.1981)). "In these cases the sovereign entity is the 'real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'" *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (quoting *Regents of the University of California v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). Thus, "an official- capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). "That is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Lewis v. Clarke*, 137 S.Ct. 1285 (2017) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

The Yurok Tribe argues that the fact that Dowd is sued in his official capacity does not make him per se immune from suit. The court agrees, as tribal sovereign immunity applies to tribal officials only if they are acting in their official capacities and within the scope of their authority. *See Linneen*, 276 F.3d at 492. The Yurok Tribe cites cases which support this general proposition. *See Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2035 (2014) (state could bring state law suit against individual tribal officials or employees (rather than the tribe itself) for gambling without a license outside of reservation boundaries); *Santa Clara Pueblo v. Martinez*, 436 U.S. at 59 (tribal immunity does not bar a suit for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct); *Arizona Public Service Co. v. Aspaas*, 77 F.3d 1128, 11133-34 (9th Cir. 1995) ("Tribal sovereign immunity, however, does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law.").

The Yurok Tribe next addresses the Rancheria's argument that the official capacity suit is, as stated in *Kentucky v. Graham,* "in all respects other than name" a suit against the Rancheria, and that the court lacks subject matter jurisdiction because the Rancheria has sovereign immunity.

5

1 The only purpose for which the Yurok Tribe could be suing Defendant Dowd in his official

2 capacity would be to seek a remedy against the Resighini Rancheria. *See Cook v. AVI Casino*

3 *Enterprises, Inc.*, 548 F.3d at 727 (in suits brought against tribal officials in their official

4 capacities the sovereign entity is the real, substantial party in interest). But the Yurok Tribe

5 explains in its Opposition that it does not seek such a remedy. It expressly seeks "declaratory

6 relief against Dowd prohibiting him from fishing within the Yurok Reservation without a permit

7 from the Tribe or a license from the State. The Tribe brings the claim against Dowd as an

8 individual in order to protect its fragile fishery." Opposition., 12:13-15. The Yurok Tribe argues,

9 "Yurok's claim against Dowd does not seek money damages that, if successful, the Rancheria

10 would have to pay, nor does a declaration that Dowd has been fishing on the Yurok Reservation in

11 violation of federal law threaten in any way the sovereign powers of the Rancheria. Thus, the

12 Rancheria is not the real party in interest to Yurok's claims against Dowd; rather, Dowd is."

13 Opposition, 7:24-8:1.

14 This language clarifies that in suing Defendant Dowd, the Tribe seeks a remedy against

15 him in his individual capacity, not in his capacity as an agent or representative of the Rancheria.

16 Under the holding in *Cook,* in stating that Dowd, not the Rancheria, is the real party in interest, the

17 Yurok Tribe in effect states that it does not bring a claim against Defendant Dowd in his official

18 capacity. Accordingly, the court must conclude that the Tribe has waived this action as to Dowd

19 in his official capacity.

20 <u>Defendant Gary Dowd, Individual Capacity</u>

21 Resighini Rancheria contends that the Yurok Tribe's claims against Dowd in his individual

22 capacity are barred because they require joinder of the Rancheria as a necessary party, and the

23 Rancheria cannot be joined because it enjoys sovereign immunity from suit. Federal Rule of Civil

24 Procedure 19, entitled "Required Joinder of Parties," provides for a two-step analysis. First, the

25 Court must determine whether a party is "required":

26

27     (1) Required Party. A person who is subject to service of process and whose joinder
will not deprive the court of subject-matter jurisdiction must be joined as a party if:

28         (A) in that person's absence, the court cannot accord complete relief among

        existing parties; or
            (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. Rule 19(a)(1). Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

The Yurok Tribe asserts two claims for relief: 1) violation of the Hoopa-Yurok Settlement Act; and 2) violation of the Yurok Tribe's exclusive federally reserved fishing right. Resighini Rancheria asserts a federally reserved right to fish from the Klamath River fishery located, in part, within the present-day boundaries of the Yurok Reservation. It claims this is a Tribal property right and not an individual Indian right. *See Whitefoot v. United States*, 293 F. 2d 658, 663 (Ct. Cl. 1961), cert. denied, 369 U.S. 818 (1962) ("We hold that the use of accustomed fishing places, whether on or off the reservation, is a tribal right for adjustment by the Tribe and the fact that certain Indians have been allowed to have sole use of a particular spot by the Tribe gives the individual no property right against the Tribe.") The Rancheria argues that it is a necessary party to this action for two reasons. First, it claims that the court cannot afford complete relief as between the Yurok and Dowd in the absence of the Rancheria because any determination of the Rancheria's federally reserved fishing rights would not bind the Rancheria. The Rancheria stresses that the federally reserved fishing rights relied on by Dowd are those of the Rancheria, not his individually. Second, it claims that a determination that the right does or does not exist or is subject to regulation by the Yurok Tribe will affect the Rancheria's interest. The Rancheria concludes that it is therefore a required party under both FRCP 19(a)(1)(A) and 19(a)(1)(B).

The Yurok Tribe responds to Resighini Rancheria's argument by redefining the issue. The Tribe argues that if the Rancheria cannot be joined, "the sole remaining claim is that Defendant

Dowd, by taking the cash buy-out under the HYSA, relinquished any claim to fishing rights in the Yurok Reservation, including the Klamath River that traverses the Reservation." Opposition, 10:12-14. The Tribe argues that the court may grant complete relief to the Tribe on its claim against Defendant Dowd in the absence of the Rancheria. *See* FRCP 19(a)(1)(A).

The relief sought against Defendant Dowd in this action for declaratory relief is the following finding:

> That Gary Mitch Dowd, individually as a member of the Rancheria, and as an officer of the Rancheria, by electing to be paid cash in return for extinguishing any and all rights and interests in the land and resources of the Yurok Tribe, including in the Klamath River Indian fishery within the Yurok Reservation, has no right to fish within the Yurok Reservation without the consent or authorization of the Yurok Tribe, or without a license issued by the State of California.

Thus, whether Defendant Dowd, by taking the cash buy-out under the HYSA, relinquished any claim to fishing rights in the Yurok Reservation is not the sole issue to be resolved in the Tribe's case against Dowd individually. To determine whether it can grant the Tribe the declaratory relief it seeks, the court must necessarily decide whether Dowd "has no right to fish within the Yurok Reservation without the consent or authorization of the Yurok Tribe, or without a license issued by the State of California." To do this the court must resolve Dowd's claim that Resighini Rancheria has a federally reserved fishing right. For the court to do so without the Rancheria as a party to the action would not bind the Rancheria with regard to the issue of where it possesses a federally reserved fishing right. The court would therefore be unable to afford complete relief as between Dowd and the Yurok. *See Skokomish Indian Tribe v. Goldmark*, 994 F.Supp.2d 1168 (W.D. Wash. 2014) (Dismissing complaint on grounds that Suquamish Tribe was necessary and indispensable party which had sovereign immunity from suit. Tribe was indispensable party because it claimed hunting rights which would be impacted by the court's ruling.)

The Tribe argues that the Rancheria's decision not to participate in this action is analogous to a party's failure to intervene, and that is it therefore not a required party. *See United States v.*

*Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (citing cases holding that joinder was unnecessary where party did not assert an interest in the subject matter of the litigation); *United States v. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994) (defendant's agreement to voluntary dismissal from an action indicated that he believed it was not necessarily in his interest to remain a party, thus his interests would not be prejudiced by his absence and he was not a necessary party). The court finds no merit to this argument. The Rancheria has no need to intervene in this action in which it was sued by the Tribe. The Rancheria, as a named party to this action, is proceeding by asserting the defense of sovereign immunity and arguing that its legal interests will be affected if the case proceeds in its absence. The Rancheria's assertion of sovereign immunity does not constitute an admission that it has no interest in the subject matter of this action. If this were the case, the doctrine of sovereign immunity would in some sense be void.

The court therefore concludes that the Rancheria is a required party pursuant to FRCP 19 (a)(1)(A). As set forth above, the court finds that the Rancheria cannot be joined because it enjoys sovereign immunity from suit. Therefore, under FRCP 19(b), the remaining issue is "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." The factors for the court to consider under these circumstances include the following:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The first factor in the Rule 19(b) analysis, prejudice to either existing or absent parties, is essentially the same as the legal interest test under Rule 19(a). *See Quileute Indian Tribe v. Babbitt*, 18 F. 3d 1456, 1460 (9th Cir. 1994); *American Greyhound Racing Inc. v. Hall*, 305 F. 3d

9

1015, 1024-25 (9th Cir. 2002) ("[N]ot surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a).").

As discussed above, with respect to the legal interest test, the Resighini Rancheria has a protectable interest in the outcome of the litigation in that it asserts a federally-reserved fishing right that could either be eliminated or made subject to the Yurok Tribe's regulation. Thus, the prejudice prong of Rule 19(b) weighs in favor of the Court finding that the action should be dismissed.

With respect to the second factor under Rule 19(b), it is not possible to lessen or avoid the prejudice to the Rancheria. The Tribe seeks a determination that Defendant Dowd has "no right to fish within the Yurok Reservation without the consent or authorization of the Yurok Tribe, or without a license issued by the State of California." The court cannot grant any of the relief requested by the Tribe without eliminating or reducing the Rancheria's asserted federally-reserved fishing right. As a result, there is no way to lessen the prejudice the Rancheria will suffer by shaping the relief granted or by placing provisions in the judgment. Thus, the second Rule 19(b) factor weighs in favor of dismissing the complaint.

The third factor, whether a judgment rendered in the Rancheria's absence would be adequate, also requires dismissal of the complaint in this case. Whether a judgment is adequate for Rule 19(b) purposes refers to the "public stake in settling disputes" among the parties to the litigation. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). It is clear from the position of the Rancheria that any judgment entered by the Court in its absence would not settle the litigation. The Rancheria argues that following any such judgment, it would continue to assert its putative federally reserved fishing right and members of the Rancheria would continue to fish in the Klamath River pursuant to the authority granted to them by the Rancheria. The court finds, therefore, that any judgment it could enter as to Defendant Dowd and the Yurok

Tribe would be inadequate, given the significant possibility that the parties to the litigation would face subsequent litigation on the same issues with the possibility of different results. *See, e.g. Northern Arapaho Tribe v. Harnsberger*, 697 F. 3d 1272, 1283 (10th Cir. 2012) ("There would be nothing 'complete, consistent, [or] efficient,' *Patterson*, 390 U.S. at 111, 88 S.Ct. 733, about the settlement of this controversy if the State of Wyoming were required to relitigate the issue with the Eastern Shoshone, with potentially different results."). Thus, the third factor favors dismissal.

The fourth and final factor – the existence of an adequate remedy if the action was dismissed – was addressed in a case that is factually very similar to this case: *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168 (W. D. Wash. 2014). There, the Skokomish Tribe sued certain state officials seeking an order from the court that it possessed the exclusive right to regulate hunting by members of other Indian tribes in territory Skokomish asserted was its exclusive hunting territory. In dismissing the Skokomish Tribe's complaint for failure to join the other tribes as necessary and indispensable parties under Rule 19, the court addressed the Rule 19 factors, including the fourth and final factor under Rule 19(b).

> The Ninth Circuit has consistently held that a tribe's interest in sovereign immunity outweighs the lack of an alternative forum. *United States v. Washington*, 573 F. 3d 701, 708 (9th Cir. 2009) (acknowledging that the tribe might not be able to sue another tribe seeking allocation of a resource because the other tribe could involve sovereign immunity, but pointing out that "not all problems have judicial solutions"); [citation omitted]; *see Wichita*, 788 F. 2d at 777 n. 13 (stating that when a necessary party is immune from suit, "there is very little room for balancing of other factors."). Furthermore, there is no reason that one sovereign should be given preference where other sovereigns share equal interests in the case . . . .
>
> \* \* \* \*
>
> In sum, Skokomish Indian Tribe seeks to litigate hunting and gathering rights under the Treaty of Point No Point and asks this court to declare that it has exclusive management authority over those Treaty rights and is entitled to an allocation of up to one hundred percent of the relevant resources. The prejudice that other signatory tribes to the Treaty will suffer if a judgment is rendered in their absence cannot be alleviated or avoided and any judgment would not render a complete resolution of the issues due to potential future litigation by other affected parties. Although Skokomish Indian Tribe will likely not have an alternative forum following dismissal of this action, this factor does not outweigh the others which favor dismissal particularly where the Tribe's inability to obtain an alternative forum is due to the necessary parties' sovereign immunity. Accordingly, the

court concludes that "in equality and conscience" this matter should be dismissed without prejudice for failure to join indispensable parties.

*Skokomish Indian Tribe*, 994 F. Supp. 2d at 1192.

The same analysis applies to the present case. The prejudice the Resighini Rancheria will suffer to its asserted tribal fishing right by a judgment rendered in its absence cannot be avoided and any judgment entered by this court cannot resolve the Yurok Tribe's contention that Defendant Dowd "has no right to fish within the Yurok Reservation without the consent or authorization of the Yurok Tribe, or without a license issued by the State of California." Although the Tribe will likely not have an alternative forum to seek resolution of the dispute following dismissal of this action, this does not outweigh the factors favoring dismissal, particularly because the lack of an alternative forum is due to the important doctrine of sovereign immunity. Based upon the foregoing application of the Rule 19(b) factors, the court must conclude that "in equity and conscience" this action must be dismissed as against Defendant Dowd without prejudice for failure to join an indispensable party. *See* Fed.R.Civ.P. 41(b) ( "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) [governing involuntary dismissal] and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

//
//
//
//
//
//
//
//

**CONCLUSION**

This action is dismissed with prejudice as against the Resighini Rancheria based on the Rancheria's tribal sovereign immunity. The court finds that the Yurok Tribe has waived its claims against Defendant Dowd in his official capacity, and those claims are dismissed. Finally, the court dismisses the action without prejudice as against Defendant Dowd in his individual capacity for failure to join an indispensable party under Rule 19.

The Clerk shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: January 25, 2018

ROBERT M. ILLMAN
United States Magistrate Judge